CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 27 2011

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal Action No.: 7:08-cr-00031-3 |
| | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| **RICHARD TYRONE MCMILLAN.** | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| | ) | |

Richard Tyrone McMillan ("McMillan"), a federal inmate proceeding <u>pro se</u>, challenges his conviction and sentence via 28 U.S.C. § 2255 for possessing a stolen firearm and being a convicted felon in possession of a firearm. McMillan claims that (1) his 1989 marijuana conviction does not qualify as a "serious drug offense" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e);[1] (2) his two 1999 cocaine convictions do not qualify as separate offenses for the purposes of ACCA; (3) his 1999 petit-larceny conviction should not have counted under United States Sentencing Guideline ("U.S.S.G.") § 4A1.1(b) (2008); (4) his obstruction of justice and assault and battery charges from 2000 should have been counted as one charge rather than two; (5) his 1999 child support conviction should not count towards his criminal history calculation because he was not represented by counsel during those proceedings; and (6) his counsel was ineffective because counsel (a) failed to appeal his sentence, (b) failed to raise the antique firearm exception, (c) failed to investigate McMillan's criminal history and object to the pre-sentence report ("PSR"), and (d) employed a trial strategy that fell below the

---

[1] The Armed Career Criminal Act "imposes a fifteen-year mandatory minimum sentence for any defendant who violates 18 U.S.C. § 922(g) and who has three prior convictions for 'serious drug offense[s]' or 'violent felon[ies].'" United States v. Toyer, No. 08–5036, 2011 WL 674737, at *6 (4th Cir. Feb. 25, 2011) (alterations in original) (quoting 18 U.S.C. § 924(e)(1)).

standard of reasonable professional judgment. The Court finds that McMillan's claims lack merit, and therefore, grants the United States' motion to dismiss.

I.   **FACTUAL AND PROCEDURAL HISTORY**

In late fall 2007, Ronald Eugene Woolwine ("Woolwine"), Mark Hollins ("Hollins"), and other individuals committed a series of residential burglaries. On November 26, 2007, during the burglary of a home located in Radford, Virginia, Woolwine and Hollins stole five pistols: a Smith and Wesson 125th Anniversary .45 caliber revolver with a six-inch barrel; a Smith and Wesson .38 Special caliber revolver; and three antique Smith and Wesson .32 caliber revolvers. Woolwine subsequently contacted McMillan because he hoped that McMillan would know a drug dealer willing to accept the stolen pistols as payment for cocaine base.

The firearms were placed in an empty beer carton and McMillan, Woolwine, and Hollins drove to Fairlawn, Virginia. McMillan and Hollins took the beer carton containing the five firearms into the residence of a cocaine base addict who had a female drug dealer staying with him, but the dealer only wanted one of the five guns in exchange for a small amount of cocaine base. Thereafter, McMillan, Woolwine, Hollins, and a fourth individual drove to Roanoke, Virginia, after McMillan had contacted a drug dealer there who was interested in the firearms. When McMillan and the others arrived at the dealer's residence, the dealer only allowed McMillan, who was carrying the beer carton with the four firearms, to enter his residence. When McMillan returned, the beer carton was empty, and McMillan had cocaine base.

On September 18, 2008, a grand jury issued a superseding indictment against McMillan on two counts: possessing a stolen firearm in violation of 18 U.S.C. § 922(j) ("count three") and possessing a firearm after having been previously convicted of a crime punishable by more than

one year of incarceration in violation of 18 U.S.C. § 922(g)(1) ("count five"). McMillan pled not guilty to the charges.

During the two-day trial McMillan, through counsel, made two stipulations. First, McMillan stipulated that the gun at issue was a firearm. (Dkt. No. 171 at 208) ("the .45 caliber Smith & Wesson, the 125th Anniversary model with the six-inch barrel, that that firearm was manufactured outside the state of Virginia at the time of -- or around December 14th, 2007, and because of that had been transported in interstate commerce"). Second, McMillan stipulated that he was a convicted felon. Id. ("at the time the defendant is alleged to have possessed the firearms in question, all five of them, or any of them, that he had, in fact, been convicted of a crime punishable by a term of imprisonment of more than one year"). Also during the trial, McMillan's counsel moved to dismiss the charges against McMillan after the government rested and after all the evidence had been presented, but this Court denied both motions.

After hearing witness testimony and closing arguments, the Court instructed the jury as to the government's burden on each of the counts. With regard to count three the Court stated:

> [T]he government must prove the following essential elements beyond a reasonable doubt: one, that the defendant, as a principal or as an aider or abetter, received, possessed, concealed, stored, bartered, sold, or disposed of the firearm described in the superseding indictment; two, that the firearm described in the superseding indictment had previously been shipped in interstate commerce; third, that the firearm described in the superseding indictment was stolen; and, four, that the defendant knew or had reasonable cause to believe that the firearm described in the superseding indictment was stolen.

(Dkt. No. 181 at 13). With regard to count five the Court stated:

> [T]he government must prove the following elements beyond a reasonable doubt: first, that the defendant had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; two, that the defendant knowingly possessed or received a firearm as described in the superseding indictment;

3

and, three, that the firearm was in or affecting interstate or foreign commerce, that is, that the firearm had moved from one state or country to another during its existence.

(Dkt. No. 181 at 15-16). The Court explained the definition of a firearm, stating:

The term "firearm" means any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; B, the frame or receiver of any such weapon; and, C, any firearm muffler or firearm silencer; or, D, any destructive device. The term "firearm" does not include an antique firearm.

(Dkt. No. 181 at 16-17). On September 30, 2008, the jury convicted McMillan of both counts.

This Court sentenced McMillan on January 6, 2009. In the PSR, relied upon during the sentencing hearing, the probation officer calculated that McMillan's total offense level was 34, after applying the armed career criminal enhancement pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(b)(3). The prior felony convictions that qualified McMillan as an armed career criminal were: a 1989 Virginia conviction for distribution of marijuana and two separate Virginia convictions for distribution of cocaine. The probation officer calculated that McMillan had 16 criminal history points and a criminal history category of VI, resulting in a guideline range of 262 to 327 months' incarceration. U.S.S.G § 5D1.1(a). The Court sentenced McMillan to, inter alia, 120 months on count three, the statutory minimum, and 180 months on count five, the statutory minimum, to run concurrently.

McMillan timely appealed his conviction, with the assistance of new court appointed counsel. McMillan argued that the evidence failed to support his conviction for three reasons: (1) the government failed to prove that the Smith and Wesson 125th Anniversary .45 caliber revolver on which the charges were based was a "firearm"; (2) the government failed to prove that McMillan knew the Smith and Wesson 125th Anniversary .45 caliber revolver was a

4

"firearm";[2] and (3) the government failed to prove that McMillan knew or had reason to believe the replica was stolen. Additionally, McMillan argued that the district court failed to instruct the jury on the definition of an "antique firearm" and that the district court failed to instruct the jury that the government had the burden of proving that McMillan knew the weapon he possessed was a "firearm" and not an antique firearm."[3] On October 13, 2009, the Fourth Circuit denied McMillan's appeal and affirmed his conviction. United States v. McMillan, 346 F. App'x 945, 946 (4th Cir. 2009). On January 19, 2010, the Supreme Court denied McMillian's petition for a writ of certiorari.

McMillan then timely filed the instant § 2255 motion on January 18, 2011. At no point in his initial motion or in his reply to the Government's motion did McMillan assert actual innocence. Furthermore, McMillan does not ground any of his claims on a change in the applicable law.

## II. LEGAL STANDARD

To obtain relief on a motion under 28 U.S.C. § 2255, the movant must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Thus, a movant must establish either an error of "constitutional or jurisdictional magnitude" or an error which "could not have been raised on

---

[2] For the purposes of a conviction under 18 U.S.C. §§ 922(j) and 922(g)(1) a firearm is defined in 18 U.S.C. § 921(a)(3)(A) as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."
[3] 18 U.S.C. § 921(a)(3)(A) specifically excludes "an antique firearm" from the definition of firearm. Antique firearms are defined as "(A) any firearm ... manufactured in or before 1898; and (B) any replica of any firearm described in subparagraph (A) if such replica (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade." 18 U.S.C. § 921(a)(16).

5

direct appeal, and if condoned, would result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). However, if a movant does not raise a claim on direct review, he may not raise it for the first time on collateral review unless the movant can show (1) cause and actual prejudice or (2) actual innocence. Bousley v. United States, 523 U.S. 614, 621–22, (1998); United States v. Landrum, 93 F.3d 122, 124–25 (4th Cir. 1996); United States v. Frady, 456 U.S. 152, 167–68 (1982). If the movant cannot satisfy the cause and prejudice analysis, movant may be excused from default if the case falls "within 'the narrow class of cases ... implicating a fundamental miscarriage of justice.'" Schlup v. Delo, 513 U.S. 298, 314-15 (1995). To do so the movant must establish through new evidence "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327.

To satisfy the prejudice element to excuse procedural default, the movant must show more than just the mere possibility of prejudice; the error must have resulted in "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170. The burden on the movant to prove prejudice is "significantly higher" than it would be to prove error on direct appeal. Id. at 166. If a defendant is clearly unable to show that actual prejudice resulted the Court is not required to consider whether adequate cause has been shown. Id. at 168.

To establish cause to excuse procedural default, the movant must show the procedurally defaulted issues "turn on something external, such as the novelty of the claim or the denial of the effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). For "cause" to be "based on a subsequent change in the law, the state of the law must have been such that the legal basis for the claim was not reasonably available when the matter should have

been raised." Mikalajunas, 186 F.3d at 493-94. For ineffective assistance of counsel to constitute cause, the movant must show that counsel's performance fell below an objective standard of reasonableness and that movant was prejudiced by counsel's alleged deficient performance. Strickland v. Washington, 466 U.S. 668 (1984). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

Additionally, the movant must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The movant "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If the movant fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing Strickland, 466 U.S. at 697). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. Strickland, 466 U.S. at 689.

## III. DISCUSSION

### A. McMillan's Allegation that his 1989 Marijuana Conviction Does Not Qualify as a "Serious Drug Offense" Under ACCA Fails.

In 1989 McMillan entered a guilty plea to a Virginia state marijuana distribution charge in which he sold 22.85 grams of marijuana to an undercover officer.[4] For this offense McMillan was sentenced to five years of incarceration. The trial Judge suspended McMillan's entire sentence and instead placed McMillan on probation for five years. McMillan asserts that the maximum period of incarceration he could have received for this offense was five years and thus

---

[4] This conviction was McMillan's first drug-related conviction. (PSR ¶¶ 32-38.)

7

the offense does not qualify as a "serious drug offense" under 18 U.S.C § 924(e). McMillan further argues that this conviction cannot be used as a one of three required predicate offenses under ACCA.

As an initial matter, the Court notes that McMillan's claim is procedurally barred. McMillan did not raise this issue on direct appeal and does not attempt to show cause or prejudice directly. However, liberally construed, McMillan makes out an ineffective assistance of counsel claim because he asked his lawyer whether the 1989 marijuana conviction qualified as a "serious drug offense" and his lawyer failed to raise it as an objection to the PSR or otherwise.

The Court finds that McMillan has failed to meet his burden to prove ineffective assistance of counsel because he has failed to produce any evidence that counsel's decision not to challenge the 1989 marijuana conviction fell below an objective standard of reasonableness. McMillan relies on United States v. Nicholson, 231 F.3d 445 (8th Cir. 2000), and 21 U.S.C. § 841(d) to support his assertion that five years was the maximum sentence he could have received for the 1989 marijuana conviction. However, this case and statute provide the federal penalties for distribution of marijuana rather than the applicable penalties under Virginia law. Under Virginia law, "it shall be unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute marijuana." VA Code § 18.2-248.1 (1989). "Any person who violates [§ 18.2-248.1] with respect to: . . . [m]ore than one-half ounce but not more than five pounds of marijuana is guilty of a Class 5 felony[.]"[5] Id. § 18.2-248.1(a)(2) (1989). See McNeill v. United States, 131 S. Ct. 2218, 2224 (2011) (holding a sentencing court determines whether "an offense under State law is a serious drug offense by consulting the maximum term of imprisonment applicable to a defendant's previous drug offense at the time of the defendant's

---

[5] McMillan's 22.85 grams of marijuana equals approximately .80 ounces.

8

state conviction for that offense."). Punishment of a Class 5 felony in 1989 was "a term of imprisonment of not less than one year nor more than ten years, or in the discretion of the jury or the court trying the case without a jury, confinement in jail for not more than twelve months and a fine of not more than $1,000, either or both." Id. ¶ 18.2-10 (1989).

For the ACCA enhancement to apply to McMillan he must have had three previous convictions for serious drug offenses. 18 U.S.C. § 924(e)(1). For a state conviction to qualify as a "serious drug offense" and predicate offense under ACCA, it must be "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). See United States v. Washington, 629 F.3d 403, 410 (4th Cir. 2011) (noting an ACCA determination during the sentencing hearing is by a preponderance of the evidence).

Counsel's decision not to challenge the use of the Virginia 1989 marijuana distribution conviction as an ACCA predicate offense was well within the bounds of professionally competent assistance.[6] McMillan's 1989 conviction for a Class 5 felony subjected him to a maximum period of 10 years' imprisonment. Therefore, counsel did not have a basis to challenge the conviction as a predicate offense. See Taylor v. United States, 495 U.S. 575, 600-602 (1990) (preferred categorical approach looks only to the relevant statutory text when it is unambigious). Accordingly, ineffective assistance of counsel cannot constitute cause to excuse the procedural default. Furthermore, McMillan does not allege a relevant change in the law or

---

[6] As an aside, the Court notes Counsel would have needed to do more than simply object to the use of the 1989 marijuana distribution conviction. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) ("A mere objection to the finding in the presentence report is not sufficient.... Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the [presentence report] without more specific inquiry or explanation."). Generally, the Court is entitled to rely on the record as set out in the PSR because the PSR "bears the earmarks of derivation from Shepard-approved sources." United States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005) (citing Shepard v. United States, 544 U.S. 13 (2005)).

actual innocence to excuse his procedural default. Consequently, this Court finds that McMillan procedurally defaulted on this claim and thus dismisses the claim.

B.  **McMillan's Allegation that his Two Cocaine Convictions Should Have Been Counted as One Offense for ACCA Purposes Fails.**

McMillan argues that his two Virginia cocaine convictions in 2000, which were committed on different dates, should be treated as one conviction for purposes of ACCA because the offenses were consolidated for trial and sentencing. McMillan was convicted of separate distribution charges for criminal conduct that happened on December 2, 1998, and December 11, 1998. The Court finds that this claim is procedurally barred because McMillan did not raise this issue on direct appeal and he does not attempt to show cause or prejudice directly and nor does he assert actual innocence.

Liberally construed, McMillan attempts to show cause by making out an ineffective assistance of counsel claim on the basis that his counsel failed to challenge the use of these two convictions as separate offenses for the purpose of satisfying the three required predicate offenses under ACCA. As an initial matter, this Court notes that in his memorandum of law in support of his § 2255 motion, McMillan "concedes, as he must, that he has been convicted of *two predicate offenses, distribution of cocaine, in Virginia state court.*" (Dkt. No. 224-1 at 4) (emphasis added). Generally, under federal law "a party is bound by the admissions of his pleadings." Grice v. Baltimore County, Md., 354 F. App'x 742, 746 (4th Cir. 2009) (quoting Best Canvas Products & Supplies v. Ploof Truck Lines, 713 F.2d 618, 621(11th Cir. 1983)).

Nevertheless, out of an abundance of caution, the Court will consider the merits of McMillan's ineffective assistance claim. The Court finds that this issue is without merit as the Fourth Circuit has previously rejected the argument that offenses consolidated for trial and sentencing should be treated as one ACCA predicate offense. See United States v. Samuels, 970

F.2d 1312, 1315 (4th Cir. 1992) ("Nothing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate offenses."). Indeed, all that is required for the offenses to be counted separately is that the offenses be "'committed on occasions different from one another.'" Id. (quoting 18 U.S.C. § 924(e)(1)). McMillan's two cocaine distribution convictions plainly meet that standard as they were committed more than a week apart. Consequently, McMillan has failed to prove ineffective assistance of counsel as a means of avoiding procedural default and the Court dismisses this claim.

C.  **McMillan's Allegation that the Court Erred in Assigning Two Criminal History Points for his 1999 Petit-Larceny Conviction Fails.**

McMillan argues that because he only spent a total of 45 days in jail, which is 15 days short of the 60 day threshold requirement under U.S.S.G. § 4A1.1(b), the district court erred in assigning two criminal history points for his 1999 petit-larceny conviction. The Court finds that McMillan's claim is procedurally barred. McMillan did not object to the calculation of his criminal history points at sentencing and did not raise this issue on direct appeal. Nor has McMillan attempted to excuse his procedural default on the basis of actual innocence or a change in the applicable law. Liberally construing the claim as an ineffective assistance of counsel claim, as a means of escaping procedural default, this Court still finds that the claim lacks merit.

Criminal history points, ranging from one to three points, are assessed under U.S.S.G. § 4A1.1 according to the length of each prior sentence. Guideline § 4A1.1(b) provides that two criminal history points are added "for each prior sentence of imprisonment of at least sixty days not counted in (a)." U.S.S.G. § 4A1.1(b) (2008). The Guidelines also address calculation of terms of imprisonment upon revocation of probation. An initial sentence imposing probation and

11

a sentence upon revocation of that probation are treated as one sentence under the Guidelines. U.S.S.G. § 4A1.2(k)(1). See also U.S.S.G. § 4A1.2(k)(1), commentary n.11 ("Rather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation [of probation] should be added to the original sentence of imprisonment, if any, and the total should be counted as if it were one sentence."). Finally, the Guidelines define a "sentence of imprisonment" as the maximum sentence imposed rather than the time actually served. See U.S.S.G. § 4A1.2(b)(1); see also U.S.S.G. § 4A1.2, commentary n.2 ("[T]he length of a sentence of imprisonment is the stated maximum.... That is, criminal history points are based on the sentence pronounced, not the length of time actually served.").

For his 1999 petit-larceny conviction, McMillan received a sentence of 30 days in jail and 12 months supervised probation. McMillan was released from jail after serving 15 days of his 30 day sentence. Subsequently, McMillan's probation was revoked and he received an additional sentence of 30 days in jail for his probation violation. Accordingly, McMillan's initial sentence of 30 days and the 30-day sentence he received when his probation was revoked should be added and counted as one 60-day sentence. Further, although McMillan states he only served 15 days of the 30-day sentence assigned for his initial conviction, the Guidelines provide that it is the maximum sentence imposed rather than the time actually served that counts for Guidelines purposes. Counsel was not deficient for failing to raise this argument and McMillan has failed to state an ineffective assistance of counsel claim. Accordingly, the Court dismisses this claim as procedurally defaulted.

D.  **McMillan's Allegation that his Obstruction of Justice and Assault and Battery Charges Should be Counted as One Charge Fails.**

McMillan argues that his obstruction of justice and assault and battery charges in 2000 should have been counted as one charge rather than two charges in calculating his criminal

history points total because the criminal conduct happened on the same day. On March 4, 2000, McMillan was charged with obstruction of justice and assault and battery. He pled not guilty to the obstruction of justice charge in the Montgomery County General District Court and on June 28, 2000, was found guilty by a jury and sentenced to four months in jail. For this conviction McMillan received two criminal history points, pursuant to U.S.S.G. § 4A1.1(b), toward his federal sentence calculation. McMillan entered a guilty plea to the assault and battery charge in the Montgomery County Circuit Court and on November 3, 2000, was sentenced to 30 days in jail. For this conviction McMillan received one criminal history point, pursuant to U.S.S.G. § 4A1.1(c), toward his federal sentence calculation. McMillian's criminal history point calculation total was 16, establishing a criminal history category of VI, pursuant to U.S.S.G. Chapter 5, Part A.

As an initial matter, this Court finds that this claim is procedurally barred because McMillan did not object at sentencing and did not raise the claim on direct appeal. Furthermore, McMillan cannot prove cause for this procedural default by relying on an ineffective assistance of counsel argument. McMillan's ineffective assistance of counsel argument fails both because it is meritless and because McMillan cannot demonstrate prejudice. McMillan's claim is meritless because the challenged charges were neither charged in the same instrument nor sentenced on the same day. See U.S.S.G. § 4A.1.2(a)(2) ("[P]rior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day."). Therefore, counsel's decision not to challenge the counting of McMillan's obstruction of justice and assault and battery charges as two separate charges, for the purpose of calculating McMillan's criminal history point total, did not fall below an objectively reasonable standard.

Moreover, McMillan cannot prove prejudice. Even if the Court were to accept McMillan's argument – that the two charges should have been counted as one charge – McMillan's criminal history point total would only have been reduced from 16 to 15, leaving his criminal history category and his guideline sentence unchanged. Therefore, the Court dismisses this claim.

### E. McMillan's Allegation that the Court Erred in Counting his 1999 Child Support Conviction Towards his Criminal History Calculation Fails.

McMillan argues that because he was not represented by counsel during his 1999 child support conviction, it should not count towards his criminal history point total. On October 18, 1999, McMillan was arrested and charged with non-support in Montgomery County Juvenile and Domestic Relations Court. It is unclear whether McMillan was represented by counsel during these proceedings, but under VA Code § 19.2-157 McMillan would have been offered counsel.[7] McMillan pled not guilty to the charge and was sentenced to seven months in jail. For this conviction McMillan received two criminal history points, pursuant to U.S.S.G. § 4A1.1(b).

The Court first notes that McMillan's claim is procedurally barred because he did not object at sentencing and did not raise the claim on direct appeal. McMillan cannot escape procedural default by proving cause and prejudice because McMillan can prove neither cause nor prejudice.

Liberally construed McMillan makes out a claim for ineffective assistance of counsel based on his counsel's failure to challenge the addition of two criminal history points for this conviction. However, this Court finds that McMillan's claim is meritless because the Fourth Circuit has previously held that a district court is not prohibited from assigning criminal history points to prior convictions in which the defendant was not represented by counsel. United States

---

[7] McMillan has not asserted that he asked for counsel at this proceeding and was denied counsel by the State.

14

v. Woody, 291 F. App'x 541, 544 (4th Cir. 2008).[8] Thus, McMillan's counsel did not fall below an objectively reasonable standard of professional judgment by failing to object to the inclusion of this conviction in the calculation of McMillian's criminal history point total. Moreover, even if McMillan had not received the two criminal history points for this conviction his total criminal history point calculation would have been 14, leaving his criminal history category unchanged. Thus, because McMillan has failed to escape procedural default through a showing of cause and prejudice this Court must dismiss the claim.

### F. McMillan's Allegation that his Counsel was Ineffective Fails.

Specifically, McMillan alleges ineffective assistance of counsel on the basis that counsel (i) failed to appeal his sentence, (ii) failed to raise the antique firearm exception, (iii) failed to investigate McMillan's criminal history and object to the PSR, and (iv) performed deficiently, falling below the standard of reasonable professional judgment, with regard to choice of trial strategy.

First, McMillan's ineffective assistance claim regarding counsel's failure to file an appeal fails because McMillan cannot prove prejudice. McMillan timely filed a notice of appeal in the Fourth Circuit and the Fourth Circuit appointed new counsel to represent McMillan on appeal.[9] McMillan's new counsel filed an opening brief and reply brief on his behalf.

---

[8] In Woody, Woody argued that a conviction obtained in violation of the right to counsel is an exception to the general rule that a state conviction may not be collaterally attacked in federal court. United States v. Bacon, 94 F.3d 158 (4th Cir. 1996). The Fourth Circuit rejected Woody's argument because Woody had been denied appointed counsel on the basis of his financial affidavits. Woody's lack of representation was due to his own failure to obtain counsel rather than any failure on the part of the state to provide an indigent with counsel.

[9] This Court notes that McMillan has not made out a claim for per se ineffective assistance of counsel. See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) ("[F]ailure to file a requested appeal is per se ineffective assistance of counsel, irrespective of the possibility of success on the merits."). Even if trial counsel was per se ineffective for not filing the appeal, § 2255 relief is not proper because subsequent counsel properly filed an appeal, which was considered by the Court of Appeals. See 28 U.S.C. § 2255(a).

Second, McMillan asserts that his counsel was ineffective because counsel failed to raise the antique firearm exception as an affirmative defense.[10] McMillan appears to argue that had his counsel raised the antique firearm exception, the government would not have been able to prove that the weapon McMillan possessed was a "firearm," as defined in 18 U.S.C. § 921(a)(3)(A). However, this Court notes that McMillan stipulated to the fact that the weapon at issue was a firearm. Specifically, during its case-in-chief the prosecution stated that the defense had stipulated that "the .45 caliber Smith & Wesson, the 125th Anniversary model with the six-inch barrel, that that *firearm* was manufactured outside the state of Virginia at the time of -- or around December 14th, 2007, and because of that had been transported in interstate commerce." (Dkt. No. 171 at 208) (emphasis added). In light of counsel's stipulation that the weapon at issue was a firearm, it was reasonable for counsel not to raise the antique firearm defense. Furthermore, this Court notes that McMillan has produced no evidence that the .45 caliber Smith & Wesson would have qualified as an antique firearm, as that term is defined in 18 U.S.C. § 921(a)(16).

Third, McMillan claims that counsel failed to challenge the calculation of his criminal history category. As explained above in Section II.A through E, McMillan's challenges to his criminal history point calculation are meritless and thus cannot serve as the basis of an ineffective assistance of counsel claim.

---

[10] In McMillan's § 2255 reply brief, (Dkt. No. 242), McMillan asserts a new argument in the section about counsel's failure to raise the antique firearm defense. McMillan asserts that counsel failed to advise him of the consequences of entering into a stipulation with the government regarding the gun. This new claim is time barred because it was raised after the expiration of the one-year limitation period specified in 28 U.S.C. § 2255(f) and the new claim merely relates to the same trial and not to any claim raised in McMillan's original § 2255 petition. See Mayle v. Felix, 545 U.S. 644, (2005) (finding that a new claim raised for the first time in an amended § 2254 petition filed after the statute of limitations had run does not relate back to the date of the original petition *simply because the new claims relate to the same trial, conviction, or sentence*) (emphasis added).

Fourth, McMillan asserts that his counsel's performance with regard to choice of trial strategy fell below the standard of objectively reasonable professional judgment. Specifically, McMillan points to his counsel's (1) failure to make the government prove the interstate commerce element of his gun possession charge, (2) failure to object during the two day trial, (3) failure to examine the evidence against him, and (4) decision to ask a witness the same question twice in an attempt to help the government's case as evidence that counsel's performance fell below an objectively reasonable standard.

Courts have consistently emphasized that counsel is to be given broad latitude with regard to his or her choice of trial strategy. In particular, the Supreme Court has stated "'[e]ven the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."). Harrington v. Richter, 131 S. Ct. 770, 788-89 (2011) (quoting Strickland, 466 U.S. at 689). Furthermore, it is not the role of this Court to second guess counsel's strategic choices. See Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

With regard to McMillan's first allegation, as noted above McMillan's counsel stipulated to the interstate commerce element of the gun possession charge. Thus it was logical that counsel did not require the government to prove this element. The decision to enter into a stipulation falls within counsel's authority to manage trial strategy. See United States v. Chapman, 593 F.3d 365, 368 ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.") (quoting Sexton v. French, 163 F.3d 874, 885 (4th Cir.1998) (internal quotation marks omitted)).

Moreover, under federal law the general rule is that stipulations are binding on the parties to the stipulation. See Lucas v. Burnley, 879 F.2d 1240, 1242 (4th Cir. 1989). Thus, McMillan has not demonstrated that his counsel's conduct fell below an objectively reasonable standard.

A close review of the record reveals that McMillan's second and third allegations, which address counsel's preparation for and conduct during trial, lack a factual basis. McMillan's counsel participated in a two-day trial where he cross-examined the government's witnesses and presented the case in defense of McMillan. During the trial McMillan's counsel made objections on the basis of hearsay and objected to the entry of a gun into evidence during the government's case-in-chief. Moreover, at the close of the government's case and after all the evidence had been presented, counsel moved to dismiss the case.[11] Again, the Court finds no evidence that McMillan's counsel fell below an objectively reasonable standard.

Regarding McMillan's fourth allegation – that counsel asked a witness the same question twice implying counsel was assisting the government – the Court has examined the transcript and believes that counsel's decision to ask a witness the same question on different days was made as part of an attempt to impeach the credibility of a government witness. This Court finds that McMillan has produced no evidence demonstrating that asking the question twice actually helped the prosecution. Thus, there is no evidence that counsel's performance fell below an objectively reasonable standard. Finally, this Court notes McMillan has failed to produce any evidence showing that he was prejudiced by counsel's performance. McMillan asserts that but for counsel's performance he would have received a shorter sentence. However, this Court notes that at sentencing the Court sentenced McMillan to the statutory minimum under ACCA, which

---

[11] This recitation of the facts is not intended to imply that had counsel failed to object during the trial or failed to move to dismiss the case these decisions would be grounds for a finding of ineffective assistance of counsel. Instead it is merely intended to demonstrate that McMillan's claims lack a factual basis.

18

was substantially below the applicable guideline range. Consequently, there was nothing more McMillan's counsel could have done to ensure McMillan received a shorter sentence.

## IV. CERTIFICATE OF APPEALABILITY

When a district court enters a final order denying a § 2255 motion the court must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing § 2255 Proceedings. A certificate of appealability should only issue if the petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2255(c)(2). Because McMillan has failed to make "a substantial showing of the denial of a constitutional right," for the reasons already outlined in this Memorandum Opinion, the Court finds that it would be inappropriate to grant a certificate of appealability in this case.

## V. CONCLUSION

For the reasons stated above, the Court will grant the United States' motion to dismiss McMillan's § 2255 petition.

ENTER: This 27th day of October, 2011.

Senior United States District Judge